UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KRIS EDWARD BRIDGES, II,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-CV-0322-TCK-CDL |
| | ) |
| **STEVEN HARPE, Director, Oklahoma** | ) |
| **Department of Corrections,**[1] **et al.,** | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Kris Edward Bridges, II, a state prisoner appearing pro se and proceeding *in forma pauperis*, brings this federal civil rights action pursuant to 42 U.S.C. § 1983. Dkt. 1. Defendants Janet Dowling, Mr. Guest, Mr. Farroll, Mr. Brown, Mr. Harrison, Unknown Female Qualified Mental Health Provider, Unknown Male Cadet Rookie, and Unknown Male/Female Nightshift Supervisor ("Defendants") have moved to dismiss the action. Dkt. 22. Bridges has submitted a response in opposition to the motion. Dkt. 25. For the reasons discussed herein, the Court GRANTS Defendants' motion and dismisses the action for failure to exhaust administrative remedies.

I.   LEGAL STANDARD

To survive a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing a motion to dismiss, the Court

---

[1] The Court substitutes Steven Harpe, Director, Oklahoma Department of Corrections, in the place of Scott Crow, as party defendant. *See* Fed. R. Civ. P. 25(d).

must accept all well-pleaded allegations in the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555-56. While the Court construes a pro se litigant's pleadings liberally, this liberal construction, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

II. DISCUSSION

Bridges alleges that he was stabbed by an inmate in 2020, while incarcerated at Dick Conner Correctional Center ("DCCC"). Dkt. 1, at 10-11. He states that he should have been placed in the handicap cell following his return from the hospital but instead was placed in a cell with an inmate who became verbally and sexually aggressive toward him and eventually sexually assaulted him. *Id.* at 11-12. Bridges alleges that the inmate was under investigation pursuant to the Prison Rape Elimination Act of 2003 ("PREA") for the sexual assault of five other inmates and therefore should have been isolated until the investigations were complete. *Id.* at 12. Bridges claims DCCC staff refused to move him to a different cell before the assault. *Id.* He states that, in a separate event, he was moved to a new cell wherein he was attacked by two inmates. *Id.* at 13. Bridges claims that DCCC staff did not have "jurisdiction" or "approv[al]" from a qualified mental health provider to move him in either instance. *Id.* at 13-14. Finally, Bridges claims that DCCC staff "leak[ed]" private information to other inmates that put him in harm's way. *Id.* at 10, 14. Bridges contends that these actions constitute violations of his right to reasonable protection from other inmates under the Eighth Amendment and a violation of his due process and equal protection rights under the Fourteenth Amendment. *Id.* at 10, 13, 18.

Defendants seek dismissal, in part, on the basis that Bridges failed to exhaust his administrative remedies under the Prison Litigation and Reform Act ("PLRA").[2] Dkt. 22, at 4-7. The PLRA prescribes that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA exhaustion requirement requires proper exhaustion," including "compliance with [a correctional facility's] deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006). The prisoner must use "all steps that the [correctional facility] holds out, and [do] so *properly*." *Id.* at 90 (citation omitted). Under the PLRA, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing [his] § 1983 claim" in federal court. *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)). The PLRA's exhaustion requirement, however, extends only to administrative remedies that are "available." *May v. Segovia*, 929 F.3d 1223, 1234 (2019) (citing *Ross v. Blake*, 578 U.S. 632, 638 (2016)). "Administrative remedies are deemed unavailable if, among other things, 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* (quoting *Ross*, 578 U.S. at 643-44). Further, "the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable." *Jernigan*, 304 F.3d at 1032.

The Oklahoma Department of Corrections ("ODOC") grievance procedure requires an inmate initially to attempt informal resolution by communicating with staff regarding the issue.

---

[2] Because the Court finds dismissal appropriate on this basis, the Court does not reach Defendants' alternative grounds for dismissal. *See* Dkt. 22, at 7-15.

Dkt. 21-8, at 8.  If the conversation does not resolve the matter, the inmate must submit a written Request to Staff ("RTS") within seven days of the incident.  *Id.* at 8-9.  The staff member assigned to respond to the RTS "will respond in writing within 10 days of receipt." *Id.* at 10.  If the response to the RTS does not resolve the inmate's complaint, the inmate may, within 15 days of its receipt, file a formal grievance with the appropriate reviewing authority.  *Id.* at 11.  If, however, the assigned staff member does not respond to a RTS within 30 days of receipt, the inmate has 60 days from the date the RTS was submitted to file a formal grievance to the reviewing authority "only address[ing] the issue of the lack of response." *Id.* at 10-11.

When an inmate files a formal grievance, the reviewing authority has 20 days from receipt of the grievance to answer the grievance, but that period may, in some circumstances, be extended an additional 20 days.  *Id.* at 13.  If, however, the inmate does not receive an answer within 30 days of submitting the formal grievance, the inmate may, within 60 days of submitting the formal grievance, file a grievance with the Administrative Review Authority ("ARA") "only address[ing] that the inmate's/offender's grievance was not answered by the reviewing authority." *Id.*  Finally, the inmate may appeal the reviewing authority's answer to the formal grievance within 15 days of its receipt by filing a grievance appeal with the ARA. *Id.* at 15.  Under ODOC's policy, RTSs, formal grievances, and grievance appeals must adhere to certain requirements as to form and substance. *Id.* at 7-17.

Defendants argue that Bridges did not submit grievances or appeals on the matters raised in his pleading until 2022, two years after the alleged events, and that none complies with the grievance policy. Dkt. 22, at 6.  Defendants cite an affidavit submitted by the Manager of ODOC's ARA, which fully supports this assertion. Dkt. 21-10, at 2-4.  Bridges submitted grievances and grievance appeals in 2022 that appear to reference his allegations of leaked personal information,

4

a "PREA" incident, and a stabbing, but the ARA found in each instance that the submissions failed to comply with the grievance policy. *See* Dkt. 21-13, at 2 (ARA notification, in ARA 22-93, that grievance did not take proper form); Dkt. 21-13, at 4-23 (plaintiff's sworn affidavit and exhibits in support of ARA 22-93); Dkt. 21-21, at 2 (ARA notification, in ARA 22-118, that affidavit submitted with grievance was not in compliance with grievance restriction policy provision); Dkt. 21-28, at 2 (ARA notification, in ARA 22-131, that affidavit submitted with grievance was not in compliance with grievance restriction policy provision). Similarly, Bridges submitted two grievances directly to the ARA relating to the alleged failure of DCCC prison staff to protect him from other inmates, but the ARA stated in its notification, in ARA 22-145, that the submissions were improperly filed. Dkt. 21-29, at 2.

Bridges points to ARA 22-145 as evidence that he exhausted administrative remedies. Dkt. 1, at 17; Dkt. 25, at 3-4. ARA 22-145 addresses two non-response grievances received by the ARA on June 6, 2022. Dkt. 21-29, at 3-9. Bridges complains in both grievances that he did not receive a response to his RTS # 1672, which he submitted to DCCC in April 2022 and which raises allegations of DCCC staff's failure to protect him from his cellmate in 2020. *Id.* 6-7. RTS #1672 was returned to Bridges unanswered, pursuant to the grievance policy, due to Bridges' "fail[ure] to submit the RTS . . . within seven days of the incident." *Id.* at 8. In finding that the two grievances challenging this response were improper, the ARA stated: "You received a response to the request to staff in question on or around 4/11/22. Your PREA allegations have been forwarded to OIG for an investigation. Relief has been granted regarding these issues." *Id.* at 2.

Bridges' submissions do not support a finding of proper exhaustion for several reasons. First, Bridges did not submit RTS # 1672 within the timeframe prescribed in the grievance policy. Second, Bridges' two non-response grievances challenging the alleged nonresponse to RTS #1672

5

were improper under the policy, as Bridges did in fact receive a response.[3] Dkt. 21-29, at 2. Bridges appears to conflate a nonresponse—where there is no response to a RTS within 30 days of its submission—with a response returning the RTS unanswered for failure to follow policy requirements. Only in the former case may an inmate "file a grievance to the reviewing authority . . . address[ing] the issue of the lack of response." Dkt. 21-8, at 10-11. Third, while ARA 22-145 states that "relief has been granted regarding [the alleged sexual assault]," this statement refers to the separate request for investigation submitted to the Office of the Inspector General in relation to the alleged assault, not relief garnered from proper implementation of the grievance policy in relation to Bridges' failure-to-protect claims. Dkt. 21-29, at 2, 21-22; Dkt. 21-5, at 2; *see Woodford*, 548 U.S. at 90 ("[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (internal quotation marks omitted)).

Because Bridges did not exhaust his administrative remedies prior to pursuing this § 1983 action, his claims are barred absent a showing that prison officials rendered administrative remedies unavailable. Bridges states in his pleading that Defendant Dowling "arbitrarily abuse[d] her power to block [him] from exhausting [his] rights." Dkt. 1, at 1. Bridges, however, provides no factual allegations supporting this assertion, and "[w]holly conclusory allegations are insufficient to establish [a plaintiff's] efforts to exhaust were thwarted or hindered by prison officials." *Plater v. Poirot*, No. CIV-21-899-R, 2022 WL 2784474, *8 (W.D. Okla. April 12,

---

[3] Bridges marked one of the June 6, 2022, grievances as "Sensitive PREA." Dkt. 21-29, at 3. Bridges' submission of this grievance directly to the ARA was additionally improper under the policy provision for sensitive grievances. Though the policy provides that sensitive grievances "of sexual abuse may be filed at any time," it requires that they first be filed with the appropriate reviewing authority, rather than the ARA. Dkt. 21-8, at 18-19.

2022), *report and recommendation adopted*, 2022 WL 1782603 (W.D. Okla. June 1, 2022); *see Mackey v. Ward*, 128 F. App'x 676, 677 (10th Cir. 2005) ("[Plaintiff's] conclusory allegations that pursuit of administrative remedies would be futile . . . are insufficient to excuse his failure to exhaust.").[4] Bridges provides no explanation for his failure to utilize the prison grievance policy until two years after the alleged events.[5]

For these reasons, the Court finds that this action should be dismissed without prejudice for failure to exhaust administrative remedies. *See Thomas*, 609 F.3d at 1118.

III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Dkt. 22) is GRANTED. Bridges' Complaint (Dkt. 1) is DISMISSED without prejudice. The Clerk of Court shall note on the record the substitution of Steven Harpe in the place of Scott Crow as party defendant. *See* Fed. R. Civ. P. 25(d). A separate judgment shall be entered.

**DATED** this 6th day of September, 2023.

TERENCE C. KERN
United States District Judge

---

[4] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[5] In considering Defendants' motion, the Court has considered and referenced materials contained in the Special Report (Dkt. 21), which was submitted in this matter on January 11, 2023, pursuant to the Court's Order of September 29, 2022 (Dkt. 11), and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1991). "In determining whether a plaintiff has stated a claim, the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes." *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993). The report may, however, "serve as the basis for a dismissal" if uncontroverted. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 n.7 (10th Cir. 2009). Here, there is no factual dispute regarding Bridges' exhaustion efforts. Rather, the parties contest whether those efforts constitute exhaustion under the grievance policy.